UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ENXHI QIRICI,
    Plaintiff

v.

CITY OF BOSTON POLICE
DEPARTMENT,
    Defendant

Civil Action No.

## VERIFIED COMPLAINT FOR AFFIRMATIVE RELIEF AND DAMAGES

### Introductory Statement

In this civil action, the Plaintiff asserts claims for sex discrimination, for unlawful retaliation and for violation of her rights of association under federal and state law.

### Jurisdiction

1. This suit is brought under the provisions of 42 U.S.C. 2000e- *et seq.* This court's jurisdiction to hear those claims is based upon 28 U.S.C. §1331 as they are claims arising under the laws of the United States.

2. In addition, the Plaintiff brings pendent state claims arising under Massachusetts General Laws, ch. 151B- *et seq.*, under 28 U.S.C. § 1367.

3. The Plaintiff has complied with all administratrive jurisdictional conditions precedent to the filing of this action, including her having made administrative presentment to the

2

Massachusetts Commission Against Discrimination (MCAD) that was also filed with the United States Equal Employment Opportunity Commission (USEEOC) under the latter's work-sharing agreement with the MCAD.

## Parties

4. The Plaintiff is a Massachusetts resident residing in Boston, MA.

5. The Defendant, Boston Police Department, is an administrative unit of the City of Boston, a municipal body-politic.

## Statement of the Facts

6. The Plaintiff is a white female of Albanian nationality.

7. The Plaintiff took and passed the Massachusetts Police Civil Service Examination in 2015.

8. She received her Civil Service Appointment on September 11, 2017.

9. She was appointed as a Police Officer for the City of Boston and performed her duties faithfully and diligently.

10. On April 10, 2018, she successfully completed training to become a Boston Police Officer and graduated from the Police Academy.

11. While at the the Academy, Sergeant Blake (male, white) yelled at the Plaintiff - who is a college graduate - and said that he did not think Ms. Qirici was going to make it through the training.

12. In May 2018, the Plaintiff began a dating relationship with a colleague who was a black male Boston police officer.

13. There was no Boston Police Department policy against the relationships between police

3

officers, and black female officers who have dated black male officers have not been subjected to the same, or similar treatment, as Plaintiff has.

14. Shortly afterwards, a Northeastern University campus officer found out about the Plaintiff's relationship and started making unwelcome comments about her relationship with a black police officer.

15. At about the same time, people at the Plaintiff's station also found out about the relationship and began making comments about the Plaintiff's sex life, discussing whom she might be sleeping with, and saying they wanted to have sex with her.

16. At that time, her schedule was moved to the daytime shift and her detail overtime was questioned.

17. From June, 2018 onwards, she heard comments about her sex life from BPD male personnel on regular basis.

18. In July 2018, the Plaintiff her boyfriend, while off-duty, went to the Boston Logan airport to seek clarification of a court order for her mother that would have allowed her to take photos inside Terminal E of the Logan Airport.

19. The Plaintiff sought advice from a trooper who escorted her to the barracks building.

20. The sergeant there believed that she had already taken photos, which she had not, and asked for identification.

21. The Plaintiff gave him her name.

22. The sergeant also asked the Plaintiff's male colleague for identification but then walked away when the Plaintiff's male colleague asked him what he was going to do with the

4

identification.

23. Before he left, the sergeant did refer the Plaintiff to the legal department to proceed with getting permission to take photos.

24. On or about July 17, 2018, the Plaintiff was transferred from District 4 to District 18 of BPD.

25. The comments from BPD male officers about the Plaintiff's sex life continued.

26. On or about August 1, 2018, the Plaintiff's male supervisor directed her to report back to the Police Academy.

27. When the Plaintiff reported back to the Academy, she was met by Sergeant Blake (male), Captain Sexton (male) and Officer Louis (female).

28. Sergeant Blake yelled at the Plaintiff claiming that she had violated Police Department Rule 102, but would not give her any more information about why she had been called out.

29. Boston Police Department Rule 102, "Conduct and General Rights and Responsibilities of Department Personnel," provides in relevant part: "...."Section 23. Truthfulness. … Reports submitted by employees shall be truthful and complete. No employee shall knowingly enter, or cause to be entered, any inaccurate, false or improper information."

30. On or about August 15, 2018, the Plaintiff reported back for duty but was not assigned a car or duties, as she was during her tenure to that date.

31. When the Plaintiff asked the duty supervisor why she had not been assigned, he explained that there had been two TABS (internal complaints) against her and that the Supervisor of Internal Affairs had ordered her to surrender her gun.

32. In most cases, an officer only has to give up her gun if she is involved in a domestic violence situation or is mentally and/or physically unstable.

33. The Plaintiff was assigned to office work, which she continued to perform well until her termination on March 28, 2018.

34. At the same time as her desk-assignment, her name was also removed from the overtime list.

35. While working at the office job in District 18, the Plaintiff was subjected to comments and speculation on a daily basis about why she had been assigned to the office and was not allowed to carry a weapon.

36. The office was rife with scurrilous sexist and racist remarks that were openly expressed and tolerated by superior officers.

37. There was gossip that the Plaintiff was pregnant and/or that she had punched someone.

38. Other officers looked at the Plaintiff's stomach and made excuses to have her walk away from her desk so that they could see if she were pregnant.

39. Others asked the Plaintiff who the baby's daddy was.

40. Multiple supervisors and other officers said that the Plaintiff could clear the TABs against her if she claimed that her boyfriend, a black BPD male officer, had sexually assaulted her.

41. The Plaintiff believes, and therefore alleges, that the two disciplinary complaints against her arose from the Northeastern campus officer harassing her because of her relationship with a male black police officer and the hostility of the state trooper sergeant at the airport toward her, later ratified by BPD.

42. The state trooper that the Plaintiff met at Logan Airport filed a report that she did not take photos, but in one of the complains against her, BPD alleged that she did take photos.

43. The Plaintiff was told by other Police officers that for anyone else these would not be termination offenses.

44. On August 15, 2018, when the Plaintiff went to her union for assistance.

45. Robert Colburn, the Boston Patrolmen Association's union representative told her, "That's what happens when you date a black guy. That's where you fu***** up."

46. Other police officers indicated to both the Plaintiff and her boyfriend that the trouble she was facing was because she was involved in an inter-racial relationship.

47. On March 8, 2019, the Plaintiff filed an administrative complaint with the Massachusetts Commission Against Discrimination against the Boston Police Department.

48. The Plaintiff's affidavit supported claims of unlawful sex discrimination and sexual harassment in violation of G.L. c. 151B, §4 and Title VII of the 1964 Civil Rights Act, 42 U.S.C. §2000e-et seq.

49. In addition, the plain language of affidavit also supported separate claims that sounded in race discrimination and associational discrimination based upon her race.

50. On March 28, 2019, 20 days after the Plaintiff filed charges of discrimination against the Boston, she was discharged from employment as a police officer.

51. The reasons given to the Plaintiff for her termination were that, on July 10, 2018 she illegally parked her marked police vehicle while on a detail; and that, when confronted,

argued with and swore at a Northeastern University Special Police Officer.

52. All the while, other BPD officers have been sanctioned for much severe infractions, such as drug use, and losing a firearm, among other things. Some of those officer graduated the Academy at, or around the same time as Plaintiff, were allowed to resign. In another instance, one officer was alleged to have committed domestic violence, but was not terminated.

53. BPD has a history of its officers parking cars illegally, was and continues to be aware of such conduct, and has not terminated any other officer for alleged illegal parking before.

### First Claim for Relief : Unlawful Discrimination Because of Sex

54. The facts alleged in the paragraphs 1 - 53 are realleged with the same force and effect and incorporated by reference herein.

55. The facts alleged state a cause of action for violations of Title VII of the 1964 Civil Rights Act, 42 U.S.C. §2000e-et seq based upon unlawful discrimination because of sex.

### Second Claim for Relief:  Hostile Workplace

56. The facts alleged in the paragraphs 1 - 53 are realleged with the same force and effect and incorporated by reference herein.

57. The facts alleged state a cause of action for violations of Title VII of the 1964 Civil Rights Act, 42 U.S.C.  §2000e-et seq based upon a hostile workplace suffused with sexual harassment and innuendos.

### Third Claim for Relief: Violation of Associational Rights

58. The facts alleged in the paragraphs 1 - 53 are realleged with the same force and effect and incorporated by reference herein.

59. The facts alleged state a cause of action for violations of 42 U.S.C. §2000e-et seq on account of unlawful discrimination based upon associational rights because of her dating a black police officer.

### Fourth Claim for Relief: Race Discrimination in Violation of Title VII of the Civil Rights Act

60. The facts alleged in paragraphs 1-53 are realleged with the same force and effect and incorporated by reference herein.

61. The facts alleged state a cause of action for violations of Title VII of the Civil Rights Act on the basis of race.

### Fifth Claim for Relief: Unlawful Retaliation

62. The facts alleged in the paragraphs 1-53 are realleged with the same force and effect and incorporated by reference herein.

63. Title VII prohibits retaliation against an employee because he or she has "opposed any practice made an unlawful employment practice by [Title VII]" or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).

64. The facts alleged state a cause of action for violations of 42 U.S.C. § 2000e-3(a) for unlawful retaliation by the Boston Police Department, because the Plaintiff exercised statutory rights permitted and protected under G.L. c. 151B and analogous Federal Laws.

### Sixth Claim for Relief: Sex Discrimination in Violation of Massachusetts Law

63. The facts alleged in the paragraphs 1 -53 are realleged with the same force and effect

and incorporated by reference herein.

64. The facts alleged state a cause of action for violations of G.L. c. 151B, §4, on account of unlawful discrimination because of sex.

### Seventh Claim for Relief: Hostile Workplace in Violation of Massachusetts Law

65. The facts alleged in the paragraphs 1 - 53 are realleged with the same force and effect and incorporated by reference herein.

66. The facts alleged state a cause of action for violations of G.L. c. 151B, §4 on account of unlawful discrimination because of a hostile workplace suffused with sexual harassment and innuendos.

### Eighth Claim for Relief: Violation of Associational Rights under Massachusetts Law

67. The facts alleged in the paragraphs 1 - 53 are realleged with the same force and effect and incorporated by reference herein.

68. The facts alleged state a cause of action for violations of G.L. c. 151B, §4 on account of unlawful discrimination based upon associational rights because of her dating a black police officer.

### Ninth Claim for Relief: Race Discrimination in Violation M.G.L. 151B

69. The facts alleged in paragraphs 1-53 are realleged with the same force and effect and incorporated by reference herein.

70. The facts alleged state a cause of action for violations of MGL chapter 151B on the basis of race.

### Tenth Claim for Relief Count 4: Unlawful Retaliation in Violation of Massachusetts Law

71. The facts alleged in the paragraphs 1-53 are realleged with the same force and effect and incorporated by reference herein.

72. G.L. c. 151B, §4.4A. That statute makes it a separate unlawful offense:

> For any person to coerce, intimidate or threaten or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter, or to coerce, threaten or interfere with such other person for having aided or encouraged any other person in the exercise or enjoyment of any such right granted or protected by this chapter.

73. The facts alleged state a cause of action for violations of G.L. c. 151B, §4.4A for unlawful retaliation by the Boston Police Department, because the Plaintiff exercised statutory rights permitted and protected under state and federal laws.

### Eleventh Claim for Relief: Breach of the Covenant of Good Faith and Fair Dealing

74. The facts alleged in paragraphs 1-53 are realleged with the same force and effect and incorporated by reference herein.

75. There is an implied covenant of good faith and fair dealing implied in every employment relationship.

76. Plaintiff expected to be treated fairly, in good faith and in full compliance of the law by Defendant, and she expected to enjoy the fruits of the bargain she had made with the Defendant, viz a vie her employment relationship.

77. Defendant's actions were without justification and had the effect of depriving Plaintiff of the reasonable expectations arising from her agreement for work with Defendant.

11

76. By its actions Defendant breached the implied covenant of good faith and fair dealing against the Plaintiff.

**Prayers For Relief**

WHEREFORE, the plaintiff prays that this Court advance this case in every way on the docket and grant a speedy trial and, after said trial, prays and demands:

(1) With respect to the all Claims for Relief, award the Plaintiff money damages.

(2) With respect to all Claims for Relief, award the Plaintiff exemplary damages.

(3) With respect to all Claims for Relief, award the Plaintiff her reasonable attorney's fees and costs as provided for under state and federal laws, statutory and common.

(4) With respect to all Claims for Relief, order Plaintiff's reinstatement as a Boston Police officer, with seniority and benefits backdated to the date of BPD's unlawful retaliatory termination, along with all other relief that is just and meet.

**Jury Trial Demand**

The Plaintiff hereby demands trial by jury on all issues herein which may be tried by right pursuant to the Seventh Amendment to the United States Constitution, and she requests an advisory jury on any factual issues material to her claims not triable by right by a jury, pursuant to Federal Rule of Civil Procedure 39(c).

12

Respectfully submitted,

ENXHI QIRICI

By her attorneys,

*/s/paulnevins*
Paul L. Nevins, BBO # 369930
Law Office of Paul Nevins
92 State Street, 8th Floor
Boston, MA 02109
(617) 372-9890
paulnevins@plnevinslaw.com

*/s/ilirkavaja*
Ilir Kavaja, BBO  # 682574
Kavaja Law, P.C.
92 State Street, 8th Floor
Boston, MA 02109
(617) 515-5545
ilir@kavajalaw.com

**Verification**

I, Enxhi Qirici, state that I have read the foregoing complaint, that I have personal knowledge of the facts which it alleges, and that the facts alleged are true to the best of my knowledge and belief.

Signed under the pains and penalties of perjury this 30th day of April, 2021.

*/s/enxhiqirici*
Enxhi Qirici